## GLENN v. GLENN.

1. A testator by his will gave power to his son to sell a tract of land "to any of my issue and to make a good fee simple title to the purchaser." The son conveyed this land in fee to *his* son, a grandson of testator. *Held,* that the grandson was embraced in the word "issue," and that he took a good fee simple title.

2. The conveyance having been made to such grandson, who, two days afterwards, conveyed it to G, who was not a descendant of testator, G took a good title, even if the deed to the grandson was intended merely as one of the links in the chain to carry title to G.

3. *Quere:* Would a devise to "A for and during his natural life, and after his death to his issue for ever, which issue shall take *per stirpes*," give to A a fee conditional, or would it give a life-estate?

Before WALLACE, J., Newberry, November, 1882.

The facts are stated in the opinion. The Circuit decree was as follows:

It will be seen on reference to the sixth clause of David Glenn's will that any of the sons was authorized to sell the land, if he did not wish to reside on it, to *any of the issue of David Glenn.* The fact that William Glenn resided in Alabama and sold the land shows that he did not wish to reside on it. The fact that he sold the land to his son, who two days afterward sold and conveyed to G. W. Glenn, sr., shows that he intended to conform to the condition of his power to convey.

Is A. J. Glenn, the son of William Glenn and grandson of David Glenn, embraced in the words "any of my issue"? "'Issue' is *nomen collectivum*, and a word of very extensive import. The term embraces descendants of every degree wheresoever existent, and unless restricted by the context cannot be satisfied by being applied to descendants at a given period." 3 *Jarm. Wills*, 200. So unless there are terms to restrict the word "issue," it certainly would include "grandsons." By the term "issue" occurring in the second clause of the will copied above, it is obvious from a mere inspection that the testator meant more than children. Nor is there anything in the will which shows an intent to restrict the sons in a narrower circle than is described by the term "issue" in its unrestricted sense. The sale to the son, then, by William Glenn was in accordance with the direction of the will and conveyed a good title.

Other questions as to the nature of the estate that the sons took under the will, and the statute of limitations, need not be discussed. It is ordered and adjudged that the complaint be dismissed.

*Mr. M. A. Carlisle*, for appellant.

*Messrs. Jones & Jones* and *Geo. S. Mower*, contra.

June 26, 1884. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. David Glenn, late of Newberry county, departed this life in 1862, leaving a will, by which, among other things, he devised as follows: "I will and devise all my land to my three sons (Posey, John, and William), to be equally divided according to valuation among them, which valuation shall be fixed by five disinterested appraisers, to be appointed by the ordinary of Newberry district, and each of said sons shall have and hold such share as may be assigned him by the said appraisers for and during his natural life; and after his death to his issue for ever, which issue shall take *per stirpes*; but in case of the death of either of my said sons without leaving issue of a predeceased child or grandchild, then the land of such son shall go to and vest in fee simple in his children living at his

death, share and share alike. * * * Sixth. That in case either of my sons shall be desirous of changing his place of residence, or not wish to come to the same to reside on it, he is authorized to sell the land I have given him to any of my issue, and to make a good fee simple title to the purchaser, but the proceeds of such sale to be reinvested by my said son in property, either real or personal, subject to the same limitations as are imposed on the land in the second clause of my will, but this provision is not to authorize said land to be sold for debt or any other purpose than as herein provided," &c.

The land was divided among the three sons, and William went into possession of the part assigned to him, described as a tract of land in Newberry county, containing 177 acres more or less, &c. A. J. Glenn, testified, subject to exception, that he resided with his father in Talladega, Alabama; that after he got possession of his part of the land, his father, the said William, on December 25, 1862, made a conveyance of the land to him (A. J. G.), and that by previous arrangement he, immediately thereafter, conveyed it to his uncle, George W. Glenn, sr., for a consideration, which was not paid to him, but under some arrangement was made to his father, the said William Glenn.

In 1877 William Glenn died intestate, and his surviving children, the plaintiffs, instituted these proceedings to recover the land and the rents and profits thereof, claiming that their father William had only a life estate in the land under the will of his father, and that his conveyance to his son, A. J. Glenn, and that of A. J. Glenn to George W. Glenn, sr., were unauthorized by the will; that the life tenant had only the power to sell to "any of the issue" of the testator David, and that A. J. Glenn, being a grandson, and not a son, was not in the category of such "issue." But if it should be so held, they insist that it is perfectly certain that George W. Glenn, sr., was not of the "issue" of the testator, and that he was really the purchaser of the land; that the two conveyances, first to A. J., and then by him to his uncle, George, were in truth only one from William to George W., which corrupt combination to do by indirection what could not be done directly, was an abuse of the power in the will, and void.

The cause was heard by Judge Wallace, who held that A. J.

Glenn, a grandson of the testator, was, nevertheless, included in the class of "the issue" of the testator, and that his father's conveyance to him was not in violation of the will, but was good as the execution of the power created by the sixth clause thereof, and dismissed the complaint. From this judgment the plaintiffs appeal to this court upon the following exceptions:

1. "Because the Circuit judge construed the will of David Glenn to include by the words 'my issue,' grandsons as well as sons, and that the context of the will did not limit or restrict it to the children of David Glenn.

2. "Because the Circuit judge erred in holding that William Glenn, the son of David, by the sale and conveyance of the land to A. J. Glenn and in two days afterwards by A. J. Glenn to G. W. Glenn, sr., executed the power conferred upon him under the will, and in that manner showed that William Glenn intended to conform to the power.

3. "Because the Circuit judge erred in construing that the power was fully executed, when the investment of the proceeds of the sale of the land was a part of the execution of the power.

4. "Because the Circuit judge erred in holding that William Glenn could convey to his son, under the power conferred by the will," &c.

After giving the land to William for life, with certain limitations over to his issue, the testator superadded the power to sell the land "to any of my issue and to make a good fee simple title to the purchaser," &c. Without reference to the other questions raised in the case, the Circuit judge held that this power was well executed by the conveyance of the devisee, William, to his son, A. J. Glenn, a grandson of the testator, and that he took "a good fee simple title." In this view we concur with the judge for the reasons given by him. The word "issue" does not embrace simply children, but grandchildren as well. "The word 'issue,' when not restricted by the context, is co-extensive and synonymous with descendants, comprehending objects of every degree." 2 *Jarm. Wills*, 25; 2 *Redf. Wills*, 396; *Burleson* v. *Bowman*, 1 *Rich. Eq.*, 111. We see nothing in the will which requires us to construe "issue" as limited to children.

It seems that the judge below did not think it necessary to

consider the view that the conveyance to A. J. Glenn should be entirely ignored, and that alone considered which was made by him to George W. Glenn, as if it had been directly made to him by William himself. Whether the testimony of A. J. Glenn was or was not competent, it is possibly true that the deed from William to A. J. Glenn, was intended merely as one of the links in the chain to carry title to George W. Glenn; but even on that assumption we think we have no right to disregard that conveyance. As William had the power under the will to convey to A. J. Glenn, who was one of the issue and remaindermen, the land after such conveyance undoubtedly became his property, with which he could do as he pleased. He conveyed it to his uncle George, and although he may now be willing to repudiate the act, the court is not at liberty to do so and to hold that it was illegal and void.

Such circuitous conveyances are not unknown in the law. Our old Court of Appeals held, that a married woman who, under the act of 1795, was incapable of conveying her inheritance to her husband directly, yet might do so indirectly—that is to say, join her husband in conveying to a third person, who, by previous understanding, might immediately reconvey to the husband. *Garvin* v. *Ingram*, 10 *Rich Eq.*, 130. In that case Chancellor Wardlaw, in delivering the judgment of the court, said: "But it is argued that as the conveyance must be to a third person, the purpose to benefit the husband is unlawful and annuls a conveyance nominally to a third person, but really for the husband's profit. This conclusion is illogical. The act makes no change of the common law, inhibiting one from conveying to himself, (*Fryerson* v. *Fryerson*, 3 *Strob.*, 461), but it authorizes, or at least does not inhibit, the power of the wife to bestow her whole estate upon her husband indirectly. * * * Dr. Blackstone remarks (2 *Bl. Com.*, 88), that the donee of fees conditional were careful to alien the estate as soon as they had performed the condition of having issue, and afterwards re-purchased the estate, to enable it to descend to heirs general by the common law; and Judge Evans, in *Kottman* v. *Ayer*, 1 *Strob.*, 570, says: 'I have known more than one case where the forms of law (1795) have been observed, merely to invest the husband with the fee of the wife's land, by a reconveyance from a pretended purchaser.' "

It was further contended for the defendant, that the very terms of the direct devise to William, under the operation of the rule in *Shelley's case*, gave him a fee-conditional in the land, and after the performance of the condition by the birth of issue, he had the absolute right to alienate generally, without any regard to, and independent of, the limited power given for that purpose in the sixth clause of the will. The terms of the devise are "for and during his natural life, and after his death to his issue for ever, which issue shall take *per stirpes*." At first view, it would seem that this is a case within the very terms of the rule, which declares that "where an estate of freehold is given to the ancestor, and a remainder be thereon limited to his heirs * * the heirs of his body or his issue, such remainder is immediately executed in possession in the ancestor, so taking the freehold, and he takes an estate in fee or in tail according to the terms of the limitation." But in opposition to this view it is earnestly urged that there are other words in the will, which limit the generality of the word "issue," and evince an intention that it should be taken to express a class as purchasers, creating a new stock of inheritance, and not to indicate an indefinite line of descent. See *McIntyre v. McIntyre*, 16 *S. C.*, 290. The question is not free from difficulty, and as it is not necessarily involved in the decision of the case, we prefer to reserve our judgment, and to make no ruling upon it.

The judgment of this court is that the judgment of the Circuit Court be affirmed.